IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| BRENT A. ADKINS, | § | C.A. NO.___ |
| PLAINTIFF | § | |
| v. | § | DIVISION___ |
| | § | |
| MARATHON PETROLEUM COMPANY, | § | JUDGE___ |
| LP | § | |
| | § | |
| DEFENDANT | § | |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, BRENT A. ADKINS, PLAINTIFF, complaining of MARATHON

PETROLEUM COMPANY, LP, and for cause of action respectfully shows unto the court and

jury as follows:

### I.   JURISDICTION

A.      This Court has personal jurisdiction over Defendant MARATHON PETROLEUM

COMPANY, LP ["MPC"], as this company is registered to do and is doing business in this state,

and he has been ordered to file this action in the judicial district near his home in Portsmouth,

Ohio.

### II.      VENUE

B.      1) PLAINTIFF, Brent A. Adkins ["PLAINTIFF"] was ordered by a state district judge in

St. John the Baptist Parish, Louisiana, under a Forum Non Conveniens ruling, to file this action

in the county of his residence or within the judicial district of his residence. Marathon transacts

business in Cincinnati, Ohio, and a de minimis portion of Mr. Adkins' cause of action took place in this county. 2) This matter was first (1st) filed in 40th Judicial District Court For the Parish of St. John The Baptist court, STATE OF LOUISIANA No. C67721, styled Brent A. Adkins v. Marathon Petroleum Co., L.P. and American Commercial Barge Line, L.L.C. 3) This is on appeal, to the 5th Circuit Court of Appeal, State of Louisiana, No. 17-C-481, and it is "stayed." (See attached order attached as exhibit "A." 4) This case is filed as a precaution to allowing the statute of limitations from running, pending the appeal of the Louisiana matter. 5) Pursuant to court order, Marathon stipulated that plaintiff could re-file within 60 days of the FNC order, and it would waive any statute of limitations defense. (Attached as Exhibit "B.").

C.      PLAINTIFF is Brent A. Adkins, who resides at 5527 Endicott Ave, Portsmouth, Ohio, 45662, and is over the age of majority.

### III.      BACKGROUND FACTS OF EXPOSURE TO H$_2$S FUMES

D.      PLAINTIFF alleges that while he was performing his assigned work as a seaman, and a tankerman for MPC, as he was working in the furtherance of the mission of the Vessels in navigation, he sustained cumulative permanent injuries to his lungs in Garyville, Louisiana working for MPC, on barges and tugs on the Mississippi River of the United States.

E.      Specifically, he sustained exposure and injury inhaling hydrogen sulfide, and other gases and fumes, in the following Louisiana parishes and towns: Norco - Jefferson Parish, Marrero - Jefferson Parish, St. Rose - St. Charles Parish, Mount Airy - St. John the Baptist Parish, and Iberville Parish. PLAINTIFF was assigned to work on barges in Louisiana from November of 2008 through August of 2010, where he worked as a deckhand, mate and/or tankerman, loading and discharging Vacuum Gas Oil and asphalt products containing Hydrogen Sulfide Gas (A/K/A H$_2$S).

F.      PLAINTIFF was not protected from inhaling the $H_2S$ fumes during loading and

unloading, and by inhaling these gas fumes, his lungs were permanently damaged with both

obstructive lung disease (industrial asthma), and restrictive lung disease, (damage to the lower

lobe with scarring), during the time from November of 2008 through August of 2010, while

working in Louisiana.

G.      When PLAINTIFF was examined by Marathon's occupational clinic doctors, he was

accepted and rated capable of doing medium level work 10/28/08.

H.      PLAINTIFF'S pulmonary function was at 72.1%, when examined by Marathon's clinical

doctors at the time of hire, on 10/27/08.

I.      After working with Hydrogen Sulfide Gas loading and unloading Vacuum Gas Oil, and

asphalt, hundreds of hours in Louisiana, primarily in St. John the Baptist and St. Charles

parishes, PLAINTIFF'S pulmonary function decreased to an FVC of 63%, and an FEV1 of 58%,

disqualifying him from being able to wear a respirator, which ability was a pre-requisite to do his

job.

J.      The U.S. Coast Guard set forth NVIC circular 3-92 in 1992, at part 1A states each Vessel

owner should establish a health and safety program that encompasses preventing injury to

seaman working around $H_2S$, and it recommended exposure assessment to $H_2S$, and Marathon

failed to do this, and it failed to keep records of the date, location, quantity, and nature of

chemical exposure to Mr. Adkins.

K.      PLAINTIFF was negligently assigned to do work that he was not fit to do between the

date of hire, 10/28/08, and 3/25/10, because his lung capacity at 72.1% disqualified him at the

time of hire from being capable of working around $H_2S$ gas fumes, in violation of U.S. Coast

Guard regulations.

L.      Defendant violated the ISM code, 33 CFR Sec. 96.100, et seq, in failing to implement a safety program with proper training of respiratory protection and rules, and in not following proper safety in accordance with the ISM code, 33 CFR 96.100, et seq., specifically:

1.  in failing to provide Plaintiff with a reasonably safe place to work, safe practices, and a safe working environment,

2.  in failing to provide proper tools, proper protective breathing apparatus, proper instructions, training, warnings, supervision and, proper medical monitoring,

3.  in failing to advise plaintiff concerning his deteriorating lung function in connection with pulmonary function studies, and

4.  in violating the ISM code in failing to maintain the equipment on the barge, specifically the hatch covers and site glasses, and

5.  other areas of ISM violations to be established in discovery.

M.      PLAINTIFF'S respiratory lung capacity was at 63% by March 25, 2010, disqualifying him from continuing to load and unload VGO and ASPHALT that contained $H_2S$ gas fumes that are known to damage lungs, and this negligent assignment of job tasks injured his lungs in Louisiana during the course and scope of his work from November of 2008 through March of 2010.

N.      The exposures to fumes and contact with liquid asphalt, $H_2S$ gas, and VGO hydrocarbon fumes, heated VGO and ASPHALT fumes caused and or contributed to cause permanent injuries to PLAINTIFF'S heart and lungs, causing scarring of the lung tissues, chronic respiratory failure, fibrosis of the lungs, obstructive lung disease, shortness of breath, atrial fibrillation, among other internal medicine problems, or alternatively, the injuries were caused by the unseaworthiness of the M/V Ashland Vessel, owned, operated, leased, or chartered by DEFENDANT.

O.      PLAINTIFF worked for MPC as a crew member and as an American Seaman on the M/V Ashland Vessel, being more or less permanently assigned to work on this tug from November of 2008 through August of 2010, and thereafter on certain tugboats and towboats which were owned, chartered, leased to the DEFENDANT, and operated in navigation on Mississippi River and its shoreline in St. John the Baptist Parish, St. Charles Parish, Jefferson Parish, Iberville Parish, and St. James Parish.

P.      PLAINTIFF assisted in performing the following tasks while acting as a tankerman, deckhand, Mate or other position, as a member of the crew, work that exposed him to harmful fumes that damaged his lungs and heart in the Louisiana parishes listed above at paragraphs "D-O."

1.  Removed and replaced flanges on intake and discharge hoses, manifolds, inspected lines for leaks, drain hoses with hydrocarbons consisting of Vacuum Gas Oil and/or Asphalt, cleaned those chemicals from catchment troughs and drip pans used for recovering hydrocarbons, which required PLAINTIFF to carry liquids in buckets or holding tanks for storage; and this exposed him to harmful $H_2S$ fumes in the aforementioned parishes, with the heavies exposures occurring in St. John and St. Charles Parishes.

2.  Monitored the flow of hydrocarbons while loading and discharging them from barges or tanks, all of which work was in the furtherance of the mission of the Vessels to which he was more or less permanently assigned, including the tug "Ashland," among other such Vessels.

3.  Performed observations, maintenance, and repair tasks on these barges and tugboats causing his personal exposure to vapors of styrene, VGO, hydrocarbons, liquid

asphalt, and other hydrocarbons, and dermal contact with the hydrocarbons, all of

which was in the furtherance of the mission of the vessel to which he was assigned.

4.  Breathed harmful fumes while eating, living and sleeping aboard the

    DEFENDANT'S tugboats during loading and unloading of VGO and ASPHALT.

5.  Opened hatch covers during loading and unloading VGO and ASPHALT at

    Garyville, La., St. Rose, La., Norco, La., Mount Airy La., Marrero, La., Iberville

    Parish locations in La;

Q.      The Barge History Report of defendant establishes that PLAINTIFF was exposed to over

2,000 hours of VGO/ASPHALT fumes in Louisiana, which fumes contained $H_2S$ gas, which

contributed in whole or in part to cause PLAINTIFF injured heart and lungs.

R.      DEFENDANTS' barges and tugs or "tow boats" carried cargoes with $H_2S$ gas, and

emitted harmful VGO and ASPHALT $H_2S$ hydrocarbon fumes under the control of

DEFENDANT, constituting an unseaworthy condition, i.e. dangerous fugitive emissions of $H_2S$.

S.      While loading and unloading ASPHALT and VGO cargoes in Louisiana, PLAINTIFF

had to:

1.  Connect and disconnect hoses between shore facilities and barges that transported

    ASPHALT and VGO cargoes during barge loading and unloading operations;

2.  Remove, adjust, and replace wires on the barges, docking and undocking them, which

    caused exposure to $H_2S$, causing damage to respiratory tract, lungs, and skin.

3.  Check the hatch covers on the barges, open the hatches and gauge the flow of the

    cargo, and was exposed to $H_2S$ fumes.

## IV.    FIRST CAUSE OF ACTION
### (NEGLIGENCE UNDER THE JONES ACT)

T.      PLAINTIFF incorporates herein by reference the proceeding Sections I through IV and their included paragraphs above, as if each was fully repeated and set forth herein, alleging each act of negligence and fault against each DEFENDANT.

U.      The aforementioned petroleum cargoes of MPC exposed PLAINTIFF to $H_2S$ hydrocarbon vapors, and fumes which PLAINTIFF was caused to inhale and have direct dermal contact with his body, and this caused, in whole or in part, his lung and hear injuries.

V.      PLAINTIFF alleges that he was negligently and chronically exposed by MPC to various petrochemical products emitting $H_2S$ gas, including VGO and ASPHALT products which fumes injured him, and caused him to eventually develop pulmonary fibrosis, shortness of breath, heart problems that has affected his mentation, brain, and causing other internal medicine problems in his body.

W.      PLAINTIFF alleges that the above exposures to VGO and $H_2S$ fumes, that caused him to develop pulmonary fibrosis, shortness of breath, heart problems, and other internal medicine problems in his body.

X.      PLAINTIFF alleges DEFENDANT did not provide him adequate instructions, warnings, supervision and training for handling the products that presented an extreme risk of harm to him, that MPC did not properly train nor supervise him in the use of the proper respiratory gear with proper instructions for using filter canisters needed to make the respirators provide effective protection from harmful over-exposure to styrene, VGO, ASPHALT and other toxic fumes containing $H_2S$.

Y.      PLAINTIFF files this suit because DEFENDANT, acting by and through its agents, managers, officers, employees, and medical department, was negligent in giving him job

assignments for which he was not fit to do, and that negligence contributed, in whole or in part to cause his injuries and damages in the following non-exclusive manner:

1. DEFENDANT failed to provide PLAINTIFF with a reasonably safe place to work, proper tools, proper protective breathing respirators and filter canisters, proper instructions, proper training, proper warnings, proper supervision and, proper medical monitoring.

2. DEFENDANT failed to exercise reasonable care under the circumstances of a high risk of harm.

3. DEFENDANT failed to properly train and supervise PLAINTIFF regarding how to safely load and discharge chemical and petroleum cargoes from the involved barges.

4. DEFENDANT failed to establish reasonably safe procedures and rules, and failed to implement them regarding PLAINTIFF'S assigned work.

5. DEFENDANT failed to train, supervise and instruct PLAINTIFF in the proper use of respirators and the filter canisters needed to make them effective protection from harmful exposures to hydrocarbons and chemicals.

6. DEFENDANT violated certain federal and state statutes and regulatory laws, and industry standards pertaining to operations, Industrial Hygiene monitoring, and evaluating potential personal exposure to petroleum substances, and education of its workers to risks of harm to the extreme risk of harm to the health and safety of their employees aboard said Vessels.

7. DEFENDANT violated its own corporate rules and policies pertaining to required, reasonable, and mandatory protection from hydrocarbon substances, as well as failing to provide proper Industrial Hygiene monitoring, daily monitoring, and health

examinations.

8.  DEFENDANT violated certain statutory laws found at 46 C.F.R. 197.501 et seq., pertaining to operations involving benzene, styrene, $H_2S$ gas, and violated performance standards concerning personal exposure to $H_2S$ gas, and other matters.

9.  DEFENDANT violated their own corporate policies pertaining to mandatory inhalation protection, including needed IH monitoring, and health examinations.

10. DEFENDANT breached its duty to PLAINTIFF by failing to comply with these practices required by the United States Coast Guard Benzene Regulations, and other chemical exposure regulations for PPM exposure; and, the violation of these U.S. Coast Guard safety statutes amounts to "negligence per se."

11. DEFENDANT violated the NAVIGATION AND VESSEL INSPECTION CIRCULAR 4-97, which is under the 1995 Amendments to the International Convention on Standards of Training, Certification and Watch keeping, which negligence constitutes negligence per se.

12. DEFENDANT violated provisions of the International Safety and Management Act provisions at 33 C.F.R. 96.100 et seq, including sections 230(b) and 250, and others, which obligated DEFENDANT to identify hazards, and act to avoid, or mitigate risks and hazards that cause personal injuries aboard their Vessels, and to audit their efforts to determine whether those identified hazards have been successfully avoided or mitigated.

13. DEFENDANT failed to adopt, comply with or incorporate the substance of the U.S. Coast Guard guidelines in Navigation and Vessel Inspection Circular No. 3-92, dated 24 February 1992, for maritime employers, entitled "Recommended Program for

Protection of Merchant Mariners from Occupational Health Problems". NAVIC 3-92, Section I.A.1.a (2), 5(f), and 6.a. (1) and section IV. B. 1 and 3 establishing evidence of DEFENDANT'S negligence.

14. DEFENDANT failed to perform medical surveillance of PLAINTIFF'S respiratory condition, and it knew or should have known that his breathing was becoming more deficient and damaged at work over time, and negligently, and alternatively, knowingly continued to assign him to work in areas with VGO and $H_2S$ fumes which are harmful fumes that had the potential to diminish breathing capacity.

15. Further, PLAINTIFF pleads and alleges alternatively each of the foregoing may be the source of harm that aggravated any pre-existing condition in his lungs, stressing and damaging his lungs, heart, and other parts of his body, rendering him totally and permanently disabled.

Z.    The violation of one or more of said laws, rules, regulations, standards, internal safety rules and policies, and/or other legal provisions constituted "negligence per se" by the DEFENDANT.

AA.    PLAINTIFF alleges the negligence of the DEFENDANT, and/or the unseaworthiness of the M/V Ashland, caused him initially to suffer serious damage to his lungs and heart; and, pleading in the alternative, work after his first serious injuries between November 2008 and August, 2010 on other Vessels owned by DEFENDANT and their barges continued to aggravate his condition; and, the unseaworthy methods of operation by DEFENDANT'S agents, doctors, managers, officers, safety department, and employees, caused or contributed to cause, in whole or in part, PLAINTIFF'S injuries, illnesses and damages during the course and scope of his employment with DEFENDANT.

BB.    As a direct and proximate result of the DEFENDANT'S negligence and the

un-seaworthiness of their Vessels, PLAINTIFF was caused to develop pulmonary fibrosis, high

blood pressure, and tachycardia heart issues, which injuries caused past, present, and future:

1.  mental and physical pain and suffering,

2.  fear of dying, mental anguish,

3.  hospitalization for numerous treatments, the necessity to use oxygen therapy for

    breathing, and medical monitoring,

4.  loss of physical and mental function, and shortened life expectancy,

5.  loss of earnings and earning capacity,

6.  medical, pharmaceutical, therapy, physician, and hospital expenses,

7.  past, present and future loss of earnings, benefits, and earning capacity,

and for which DEFENDANT is liable to PLAINTIFF under the Jones Act, the general

maritime law for their negligence, and for the unseaworthiness of its Vessels.

CC.    In the alternative, the negligence of DEFENDANT'S selected health care providers,

physical examiners, personnel of its medical department, contracted doctors, and/or its industrial

hygiene department, caused, in whole or in part, PLAINTIFF'S injuries and damages, and led to

their exacerbation and aggravation of pre-existing conditions.

DD.    During PLAINTIFF's employment with DEFENDANT, on or about 5/26/2012,

PLAINTIFF became dizzy and short of breath while working on DEFENDANT'S Vessel, and

PLAINTIFF was taken directly to the emergency room hospital for treatment; thereafter, he was

not allowed to return to work due to severe respiratory deficiency and injury, and DEFENDANT

has denied maintenance and cure arbitrarily and capriciously, and classified PLAINTIFF's

injuries as non-job related, knowing such statements to be false.

## V.  SECOND CAUSE OF ACTION
### (UNSEAWORTHINESS)

EE.     PLAINTIFF incorporates herein by reference the foregoing sections and their included paragraphs as if each was set forth herein in full.

FF.     At all material times, the Vessels described herein were unseaworthy because the methods of operating said Vessels and not properly deploying respirators and filters were deficient rendering these appliances unseaworthy and not reasonably suited for the purposes for which their operations were intended, and which adversely affected safety. In addition, DEFENDANT violated ISM and International Maritime Organization (IMO) standards, and certain federal statutes and Coast Guard regulations. DEFENDANT violated its own safety operating rules and policies.

GG.     The unseaworthiness of the subject Vessels was a substantial factor in producing PLAINTIFF's injuries and damages as described above at paragraph BB.

HH.     DEFENDANT is strictly liable for causing his injuries and damages, and repeats his claimed damages as pled above at paragraph BB, just as if copied and stated here, fully, in this paragraph.

## VI.  THIRD CAUSE OF ACTION
### (MAINTENANCE AND CURE)

II.     PLAINTIFF incorporates herein by reference, the preceding sections and included paragraphs as if each was fully set forth herein.

JJ.     By reason of the above described injuries and illnesses sustained by PLAINTIFF in the course of his employment as a seaman, MPC had a legal duty to provide him with prompt and adequate maintenance and cure benefits for purposes of treating his illnesses and injuries.

DEFENDANT has failed to provide maintenance and medical cure, at a reasonable rate of $75.00 per day; and, in addition, DEFENDANT is liable to PLAINTIFF for compensatory damages, attorney fees and punitive damages for its unreasonable and arbitrary failure to pay maintenance and cure.

KK.     PLAINTIFF alleges the failure to pay maintenance and cure has caused damages listed below for past, present and future:

1.  Daily Maintenance and payment of medical Cure at $75.00 per day, since PLAINTIFF became unable to work on or about May 26, 2012, and departed the defendant's barge with tachycardia and breathing issues;

2.  Physical pain and suffering and mental anguish;

3.  Medical, doctor, hospital, therapy, medical appliances, oxygen, medicines, and pharmaceutical expenses;

4.  Punitive and/or compensatory damages for DEFENDANT failure or refusal to provide maintenance and cure;

5.  Pre-judgment interest;

6.  Attorney's fees, and

7.  Such other and further relief, as the court deems just and proper, at law or in equity.

## VII.    PRAYER

**WHEREFORE, PREMISES CONSIDERED,** PLAINTIFF prays that DEFENDANT be made to appear and answer, and that after due proceedings are had, that judgment be entered against DEFENDANT MARATHON PETROLEUM COMPANY, L.P., in an amount within the jurisdictional amount of this court, for monetary relief over $1,000,000, and for not more than $25,000,000. PLAINTIFF demands trial by jury, all costs of court, attorney fees, compensatory

and punitive damages, and general and equitable relief as justice demands.

**DATED:** September 25, 2017

Respectfully submitted,

_/s/Aaron G. Durden_____
Aaron G. Durden
Durden Law, L.P.A., LLC
10 West Monument Avenue
Dayton, Ohio 45402
(937) 461-9400
(937) 222-1841 Fax
agdlawyer@aol.com
ATTORNEY FOR PLAINTIFF
BRENT A. ADKINS