# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BRENT A. ADKINS,
Plaintiff,

Case No. 1:17-cv-643
Dlott, J.
Litkovitz, M.J.

vs.

MARATHON PETROLEUM
COMPANY, LP,
Defendant.

**ORDER**

## I. Procedural History

Plaintiff Brent A. Adkins brings this action against defendant Marathon Petroleum Company, LP (Marathon) for negligence under the Jones Act, 46 U.S.C. § 30104, vessel unseaworthiness under the general maritime law, and maintenance and cure. Plaintiff originally filed his case in Louisiana state court in 2015, where it was dismissed on *forum non conveniens* grounds. Plaintiff re-filed the lawsuit in this Court in late September 2017. Plaintiff alleges in the second amended complaint that he was exposed to hydrogen sulfide ($H_2S$) while working as a tankerman, deckhand, mate, and crew member for Marathon from November 2008 until May 2012. (Doc. 18). Plaintiff claims he was injured as a result of long-term exposure to $H_2S$ and other hydrocarbon fumes in the scope and course of his employment aboard tugs and barges owned and operated by Marathon. Plaintiff alleges that Marathon negligently caused him to be chronically exposed to $H_2S$ fumes while loading and unloading cargoes of vacuum gas oil (VGO) and asphalt products. Plaintiff claims the fumes injured him and his lung performance deteriorated rapidly as a result of his exposure to $H_2S$ such that that he now requires supplemental oxygen on a nearly continuous basis. Plaintiff alleges that the unseaworthiness of Marathon's vessels was a substantial factor in his injuries and that he is entitled to maintenance and cure.

The Court has held several informal discovery conferences with the parties' counsel to

resolve various discovery disputes that have arisen in the case. Over the course of discovery, the parties have submitted briefs on specific discovery issues as directed by the Court. The parties' discovery disputes have largely revolved around the subject of atmospheric and exposure monitoring of $H_2S$, which plaintiff has referred to as "Industrial Hygiene (IH) studies" or "Industrial Hygiene reports." Plaintiff alleges that Marathon has not produced IH studies for $H_2S$-producing agents to which he was exposed over the course of his employment with Marathon. Marathon argues in response that it has produced all of the relevant information that plaintiff seeks in a 142-page document, which purportedly is a compilation of the results of all atmospheric monitoring Marathon performed in its marine division between 2006 and 2012. (*See* Doc. 53, Exh. 20). Plaintiff contends that the 142-page document does not satisfy Marathon's discovery obligations because Marathon has failed to produce other information related to $H_2S$ monitoring and exposure which is relevant to plaintiff's discovery requests but is not included in the 142-page document. Plaintiff asserts that the undisclosed information includes the underlying, or source, data for the information provided in that exhibit.

The Court issued discovery Orders following the informal discovery conferences with the parties' counsel, including a May 14, 2019 Order on issues related to plaintiff's Requests for Production of Documents (RFP) Nos. 28, 29, and 30. (Doc. 38). Plaintiff sought in those requests: (1) documents related to IH studies Marathon had performed to determine the existence of $H_2S$ gas emissions on its tugboats and barges which carried specified $H_2S$-producing materials (RFP No. 28); (2) IH records and other written materials reflecting certain properties of Marathon's fuel and liquid cargoes, including all $H_2S$ monitoring results related to exposure of crews to $H_2S$ and benzene while serving on Marathon tugboats and barges during the period of

2

plaintiff's employment (RFP No. 29); and (3) all IH or other reports prepared for Marathon relating to the level of airborne chemical and hydrocarbon fumes during the period of plaintiff's employment (RFP No. 30). (Doc. 38-3).

The Court directed Marathon to respond to RFP No. 28 by providing the following documents for the relevant time period (November 2008 through May 26, 2012): (a) lab analysis of the amount of $H_2S$ and other hydrocarbon emissions of the products transported on the vessels plaintiff was assigned to; (b) the IH samples for asphalt and VGO that were taken on any barges that plaintiff worked on, and during the loading and unloading of those barges, which carried those products; (c) the certificate of analysis for any testing related to these products which was conducted on the vessels that plaintiff worked on; and (d) for any sampling IH reports produced for the asphalt and VGO samples on the barges described in (b), the identity of the product tested, including a lab number to match any certificate of analysis. (Doc. 38 at 5-6). The Court ordered Marathon to respond to RFP Nos. 29 and 30 to the extent those materials relate to the products at issue (asphalt, VGO, $H_2S$ gas, and other hydrocarbon emissions), for the relevant time period (November 2008 through May 26, 2012), which were transported by vessels that plaintiff was assigned to during his employment with Marathon. (*Id*. at 6).

The Court held two follow-up discovery conferences. (*See* Docs. 39, 43). As of June 12, 2019, the parties had exhausted the informal discovery process. The Court ordered the parties to: (1) go forward with the Rule 30(b)(6) depositions; and (2) if plaintiff maintained the position following the depositions that Marathon had not produced all material relevant to his document requests, then plaintiff could file a motion to compel supported by (i) evidence to show that the material produced by Marathon was non-responsive, and (ii) legal authority for his position that

Marathon had failed to produce information that was responsive to plaintiff's document requests. (Doc. 43).

Because plaintiff believed following completion of the Rule 30(b)(6) depositions that Marathon had not produced all relevant materials in response to the Court's May 14, 2019 Order, he filed a motion to compel. (Doc. 47). Plaintiff also moved for leave to file an amended supporting memorandum. (Doc. 50). Marathon does not oppose plaintiff's motion for leave to file an amended memorandum, and the motion (Doc. 50) is therefore granted. The matter is now before the Court on plaintiff's motion to compel (Doc. 47), the amended supporting memorandum (Doc. 58), defendant Marathon's opposing memorandum (Doc. 65), and plaintiff's reply (Doc. 69). The Court held a hearing on the record on the motion to compel on November 21, 2019. For the reasons stated on the record at the hearing and set forth below, plaintiff's motion to compel is granted in part and denied in part.

## II. Plaintiff's motion to compel/motion for sanctions (Doc. 47)

Fed. R. Civ. P. 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection" if another party fails to provide discovery responses or provides an evasive or incomplete response. Fed. R. Civ. P. 37(a)(3)(B), (4). Fed. R. Civ. P. 26(b) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1); *N.T. by and through Nelson v. Children's Hosp. Med. Ctr.*, No. 1:13cv230, 2017 WL 5953432, at *4 (S.D. Ohio June 30, 2017). The party "who files a motion to compel discovery bears the burden of demonstrating relevance." *Id.* (quoting *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017)). If the Court

grants a party's motion to compel, Rule 37(a)(5) authorizes the imposition of sanctions on the noncooperative party or their counsel, unless certain exceptions apply. Fed. R. Civ. P. 37(a)(5).

Plaintiff moves to compel discovery and impose sanctions on Marathon on three basic grounds. First, plaintiff contends that Marathon did not produce Rule 30(b)(6) witnesses who were knowledgeable about the subject areas they were designated to testify on. (Doc. 58 at 19-25, Exh. 3- Plaintiff's Rule 30(b)(6) Notice of Deposition). Second, plaintiff argues that Marathon did not produce requested IH documents in connection with the Rule 30(b)(6) depositions, even though such documents should be available to Marathon due to the nature of its business and its industry. (*See* Doc. 58 at 27-33, Exh. 1- Plaintiff's First Request for Production of Documents). Third, plaintiff contends that Marathon has not complied with the May 14, 2019 discovery Order by producing documents as ordered by the Court. (Doc. 58 at 46-47, Exh. 2- Plaintiff's Second Request for Production of Documents, Nos. 28, 29, 30). Plaintiff argues that Marathon has engaged in a continuing pattern of abuse of the discovery rules that started in the prior Louisiana state court case and has continued to the present time. (*Id*. at 49-51). Plaintiff claims he is entitled to legal sanctions for Marathon's alleged discovery abuses, ranging from financial penalties to default judgment. (*Id*. at 52-54).

With respect to the alleged Rule 30(b)(6) witness deficiencies, plaintiff withdrew his objections to all but Topic 25, relating to the deposition testimony of Jennifer Boggs. For the reasons stated on the record at the hearing, the Court overruled plaintiff's objection and determined that Ms. Boggs' deposition testimony was not deficient as to this topic.

As to the alleged Rule 30(b)(6) document deficiencies, plaintiff withdrew all of his objections with the exception of documents sought in response to Request No. 13 (Doc. 58-3 at

19). For the reasons stated on the record at the hearing, the Court overruled plaintiff's objection.

With respect to the documents sought in response to plaintiff's Second Request for Production of Documents, Nos. 28, 29, and 30, the Court has considered the parties' written submissions related to the current discovery dispute; counsel's arguments presented at the hearing on the motion to compel; the exhibits entered into the record at the hearing; and the testimony provided by plaintiff's proffered expert witness, Certified Industrial Hygienist Rachel M. Jones, Ph.D., CIH.[1] Plaintiff has carried his burden to show that three categories of documents which he seeks are relevant to his claim that from November of 2008 through May of 2012, defendant Marathon negligently exposed plaintiff to hydrocarbon-based chemicals which emitted hydrogen-sulfide ($H_2S$) and other hydrocarbon gases and resulted in his current medical condition and need for an external oxygen supply.

### 1. EXAM Program

The first category of documents relates to Marathon's Exposure Assessment Method (EXAM) Program. (*See* 11/21/2019 Hearing Exhibits, Pltf. Exh. 5). Marathon employee Kristopher Scott Perdue testified about the EXAM Program during his Rule 30(b)(6) deposition. (Doc. 53, Exh. 20). Perdue testified that he had worked at Marathon in the quality control area until 2007; in the area of emergency preparedness from 2007 until 2010; and as a field safety professional and Industrial Hygienist in Marathon's marine division beginning in 2010 and through the end of plaintiff's employment. (Doc. 53 at 8-9, 25-26, 46, 112). Perdue described

---

[1] Dr. Jones' *curriculum vitae* is attached to the motion to compel. (Doc. 58, Exh. 13). The Court offers no opinion in connection with the motion to compel on whether Dr. Jones qualifies as an expert witness under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

the EXAM Program as a "risk assessment-type of methodology" which "incorporates IH's best practices" and consists of several steps. (Doc. 53 at 113-15). First, job tasks are qualitatively analyzed in groups and "similar exposure groups (SEGs)" or "similar exposure tasks (SETs)" are established. (*Id*. at 115). Second, the routine and non-routine tasks are identified for each SEG and SET. (*Id*.; Hearing Exh. 5). Third, a health risk rating (HRR) is calculated for each SEG or SET based on a formula that factors in the exposure rating (ER) and the health effect rating (HER) of the pertinent chemical or agent. (*Id*. at 115-16, 120). The ER is a quantitative rating of 1 to 4. (*Id*. at 116). The HER is provided by Marathon's toxicology department in Findlay, Ohio, based on research and the toxicological effect of the chemical or agent. (*Id*. at 116-17). Perdue testified that source documents should disclose the HER that Marathon's Occupational, Environment, and Health (OEH) department assigned to $H_2S$ under its EXAM Program. (*Id*. at 119). Fourth, the EXAM Program requires periodic reassessment of potential exposures. (*Id*. at 122; Hearing Exh. 5). Perdue testified that chemicals and agents are assigned a "reassessment value" based on the risk disclosed by the monitoring data, and the reassessment value determines the frequency of testing. (*Id*. at 122). The frequency of testing ranged from every six months for the highest risk chemicals/agents to every five years for the lowest risk chemicals/agents. (*Id*.). Those chemicals/agents to be tested were included in an annual air sampling monitoring plan generated by Marathon, which set forth the agents/chemicals to be tested each year and the testing requirements. (*Id*. at 271).

Perdue testified at his deposition that Marathon's determination as to which agents would be tested for was made based on the EXAM process and Marathon's annual air sampling plan. (Doc. 53 at 92, 239-40). He also testified that the 142-page document produced by Marathon in

7

discovery (Doc. 53, Exh. 20) contains the results of all "personal atmospheric or exposure monitoring" performed by Marathon as part of the EXAM process for terminal, transport, and rail (TT&R) personnel in its marine division between 2006 and 2012, including any atmospheric $H_2S$ monitoring for deck crew during that time frame. (Doc. 53 at 235-36, 237, 239, 241). Perdue explained that the 142-page document reflects laboratory analysis collected in connection with Marathon's annual sampling as part of the EXAM process. (*Id*. at 236).

Perdue's testimony and plaintiff's exhibits disclose an unexplained gap in the documentation Marathon has provided that relates to its monitoring and testing for $H_2S$ levels. According to Perdue, Marathon monitored and tested $H_2S$ levels prior to and during 2007 based on the EXAM Program and annual air sampling plans. (*Id*. at 239-40). Exhibit 20 includes 12 sampling data results for $H_2S$, all of which date from 2007 or earlier. (*Id*. at 241; Exh. 20). Perdue testified that based on the monitoring data in Exhibit 20, $H_2S$ was not an agent that was tested under the marine division's exposure assessment process after 2007 because Marathon determined that $H_2S$ did not present any health risk to deck crew members. (*Id*. at 251-52). However, Marathon has not produced documentation that shows it reassessed $H_2S$ as required under its EXAM Program in reaching that conclusion. Marathon has not provided documents or electronically stored information that reflect the underlying data, calculations, reports, and analysis that led Marathon to conclude it was not necessary to test for or monitor $H_2S$ as part of its annual air sampling for any year after 2007. Because Marathon has described a thorough risk exposure assessment procedure under which it tested for and monitored $H_2S$ exposure as late as 2007, Marathon should have documents and information related to its reassessment of $H_2S$ under the EXAM Program and to its determination there was no need to test for $H_2S$ as part of its annual air

8

sampling after 2007. To date, Marathon has not produced such documents.

Plaintiff has provided or cited other evidence which indicates that Marathon should have documents and information related to $H_2S$ risk assessment and monitoring for years after 2007. First, plaintiff has pointed to evidence that Marathon perceived $H_2S$ exposure as a potential risk to deck crew members after 2007 and for the duration of plaintiff's employment. Perdue testified that members of the deck crew wore $H_2S$ monitors that were set to alarm when $H_2S$ concentrations reached a certain level, and four-gas monitors were also utilized to measure the concentration of $H_2S$ in the atmosphere in designated work areas as a safety precaution. (*Id*. at 252-54). Those safety devices did not collect any monitoring data but served the sole purpose of protecting Marathon employees against potentially harmful concentrations of $H_2S$. This evidence indicates that Marathon considered $H_2S$ exposure to pose a continued risk to deck crew members after 2007. (*Id*.).

Moreover, according to Perdue, a Marathon Industrial Hygienist from 2010 until the end of plaintiff's employment, Marathon was required to assess the risk posed by a chemical or agent if the use of respiratory protection was mandated for purposes of guarding against the risk. (*Id*. at 123-25). Marathon's policies mandated the use of respiratory protection for workers who potentially were at risk of being exposed to $H_2S$. (*Id*.). Thus, Marathon should have documentation and information related to its monitoring of $H_2S$ exposure and assessment of risks associated with such exposure for the relevant time period. This includes the underlying data, calculations, reports, and analysis which led Marathon to conclude that despite a risk to employees which necessitated their use of safety precautions and respiratory protection, Marathon was not required to perform annual air sampling for $H_2S$ after 2007 in accordance with its own policies.

In light of this evidence, plaintiff is entitled to the EXAM Program results for $H_2S$ testing for the 2007 through 2012 time period, including documents or electronically stored information that reflect the underlying data, calculations, reports, analysis, and recommendations for additional testing, if any, made by Marathon.

### 2. $H_2S$ entries in Exhibit 20 to Perdue deposition

The second category of documents that plaintiff has shown is relevant, and which Marathon should have in its possession, is the source data or underlying information for the $H_2S$ sampling data reflected in the 142-page document. (*See* Perdue Depo., Doc. 53, Exh. 20). Perdue testified at his deposition that Marathon determined which agents it would test for in a given year based on the EXAM Program and the annual air sampling plan. (Doc. 53 at 239-40). Perdue also testified that the 142-page document reflects any $H_2S$ monitoring that Marathon performed for deck crew members between 2006 and 2012. (Doc. 53 at 235-36, 237, 241). The document is comprised of several columns which list: (1) the sample number; (2) the sample date; (3) the employee (the individual wearing the personal monitor at the time of the incident); (4) the API (American Petroleum Institute) process, which is the area of operation or work area; (5) the API task; (6) the limit type, which is the TWA (8-hour time-weighted average) or STEL (short-term exposure limit); (7) comments (Industrial Hygienists' comments concerning the work tasks that were occurring at the time); (8) the agent being sampled for; and (9) < or > detectability levels. (*Id*. at 82-86; Hearing Exh. 5). Perdue testified that the raw data, or concentration amounts, provided by a third-party lab, Bureau Veritas North America, Inc. (Bureau Veritas), for the agents Marathon monitored as part of its annual air sampling plans are also included in the last four columns of Exhibit 20. (Doc. 53 at 271-72).

The 142-page document includes 12 results for atmospheric monitoring of $H_2S$, all of which are dated 2007 or earlier. (*Id.* at 240-41). Perdue testified that based on the monitoring data in the document, $H_2S$ was not tested under the marine division's EXAM Program between 2008 and 2012 because a determination was made that $H_2S$ did not present any health risk to deck crew members. (*Id.* at 251-52). As discussed above, how that determination was made, the information and analysis the determination was based on, when the determination was made, and who made the determination are matters that are relevant to plaintiff's claims in this lawsuit. According to Perdue's testimony and other information in the record, the 142-page document does not reflect all of this relevant information. Rather, Perdue testified that the determination as to which agents Marathon would test for was made in part based on the annual air sampling plans, which are separate documents that are not included in the 142-page document. (Doc. 53 at 239-40, 271). Further, while Perdue testified that raw data from Bureau Veritas was included in the 142-page document, the document does not disclose the information that Marathon provided to Bureau Veritas for analysis. Finally, as discussed earlier, although Perdue testified that the data depicted in the 142-page document is sufficiently detailed to enable a qualified Industrial Hygienist to perform their job and make the correct risk assessment (*Id.* at 242-43), the document does not include sufficient information to demonstrate why Marathon did not include $H_2S$ in its EXAM Program and annual air sampling plans after 2007. Plaintiff has carried his burden to show that the source data for the information depicted in the 142-page document is relevant to this issue and others underlying his claim. The information should be in Marathon's possession. Thus, the source material for the data reflected in the 142-page document (Doc. 53, Exh. 20) must be produced insofar as Marathon is in possession of this information.

### 3. Marathon refineries data

Plaintiff has carried his burden to show he is entitled to discover a third category of documents, which is any data related to testing and monitoring of dock workers for $H_2S$ exposure at Marathon's refineries from 2008 to May 26, 2012. Perdue testified that the 142-page document does not include data from any of Marathon's refinery components, even though refinery loading personnel and marine personnel could be affected by levels of $H_2S$ in products that Marathon produced at its refinery. (Doc. 53 at 264-66). This information is relevant to plaintiff's claim that he was harmed by chronic $H_2S$ exposure during his employment with Marathon, and it should be in Marathon's possession. Marathon must produce documents containing data related to testing and monitoring of dock workers for $H_2S$ exposure at Marathon's refineries from 2008 to May 26, 2012.

### 4. Conclusion

Plaintiff is entitled to documentation related to the results of $H_2S$ testing and monitoring conducted under the EXAM Program for the 2008 through 2012 time period, including documents or electronically stored information that reflect the underlying data, calculations, reports, analysis, and recommendations for additional testing made by Marathon, if any; the source information and data for the information depicted in the 142-page document (Doc. 53, Exh. 20), insofar as Marathon is in possession of such information; and any data and documents related to testing and monitoring of dockworkers at Marathon's refineries for $H_2S$ exposure from 2008 to May 26, 2012. Because it is not clear at this point whether Marathon has documentation and information that is responsive to plaintiff's discovery requests but which Marathon has not produced, plaintiff has not shown he is entitled to sanctions under Rule 37.

## III. The parties' remaining pending discovery motions

### 1. Plaintiff's request for a hearing (Doc. 34)

Plaintiff filed a memorandum on May 5, 2019 in response to defendant's request for relief from plaintiff's "requested 30(b)(6) deposition of defendant." (Doc. 34). In the memorandum, plaintiff asked the Court to "consider hearing why [defendant] refuses to fully answer [plaintiff's] First Request for Production"; why defendant was refusing to produce the 30(b)(6) witness or witnesses on May 8, 2019; and why plaintiff had to conform to defendant's schedule. (*Id.*). The 30(b)(6) witnesses have been deposed, and a hearing has been held on plaintiff's motion to compel responses to his discovery requests. Thus, plaintiff's request for a hearing as set forth in his memorandum (Doc. 34) is denied as moot.

### 2. Plaintiff's motion for leave to file additional discovery motions (Doc. 63)

On July 22, 2019, plaintiff filed a motion for leave to file additional discovery motions. (Doc. 63). Plaintiff seeks leave to file two proposed motions without engaging in informal dispute resolution: (1) a motion to strike defendant's answers and compel responses to written discovery, and (2) a motion to compel entry on land. (*Id.*, Attachments 1, 6). Defendant opposes the motion because plaintiff has not met and conferred with defendant in an effort to resolve the discovery dispute in good faith. (Doc. 71). Defendant also contends that plaintiff's discovery requests amount to a fishing expedition; plaintiff should have brought his motion under Rule 36 insofar as it relates to requests to admit under that provision; and plaintiff has not shown why the discovery responses he challenges are improper. (*Id.*). In reply, plaintiff alleges that defendant has failed to address the substance of his motion and has made only boilerplate objections to his discovery requests. (Doc. 72).

Plaintiff's request to forego informal dispute resolution before filing additional discovery motions is not well-taken. Plaintiff concedes that before filing a motion to compel with the Court, "parties are required to undergo informal dispute resolution regarding the filing of discovery motions" under the Local Rules and Standing Orders of the Southern District, Judge Dlott, and the undersigned. (Doc. 63 at 1). Plaintiff has not provided any justification as to why he should be excused from complying with the Local Rules and the Court's Standing Orders. Plaintiff states only that he "believes that in the interests of bringing these matters before the Court it is necessary to file the instant motions without delay." (*Id.*). Plaintiff's motion for leave to file additional discovery motions (Doc. 63) is denied.

### 3. Defendant's motion to quash plaintiff's subpoena, or in the alternative, for a protective order (Doc. 67)

On July 30, 2019, defendant Marathon moved to quash a subpoena which plaintiff had served on its registered agent in Frankfurt, Kentucky on or about July 16, 2019.[2] (Doc. 67, Exh. 1). The subpoena seeks documents and materials including "Industrial Hygiene data," "air monitoring sampling plans and data," and "documents that define the goals, objectives, procedures, requirements, frequency of and locations of all Industrial Hygiene monitoring, [and] sampling or recording of environmental data regarding any of [defendant's] employees or contractors." The return date listed in the subpoena for producing the materials is August 14, 2019. Defendant alleges that the subpoena is not a proper method to obtain documents and other discovery materials from a party and it is untimely; is cumulative of other document productions

---

[2] Plaintiff served a substantially similar subpoena on nonparty Bureau Veritas North America, Inc., which Marathon does not challenge in its motion to quash.

and discovery; and exceeds limits which the Court has previously placed on the scope of discovery in this case. Plaintiff has not responded to defendant's motion to quash.

Marathon's motion to quash the subpoena served on its registered agent (Doc. 67) is granted. A subpoena duces tecum under Fed. R. Civ. P. 45(a) generally applies to non-parties and is not necessary when the person or entity from whom the documents are sought is a party. *See Kean v. Van Dyken*, No. 4:05-cv-64, 2006 WL 374502, at *6 (W.D. Mich. Feb. 16, 2006) (citing *Smith v. Pendergrass*, No. 1:02-cv-125, 2003 WL 21919182, at *1 (N.D. Ind. June 17, 2003)). The proper mechanism for obtaining discovery documents from a party is by serving a document request on the party under Fed. R. Civ. P. 34. *Id.* (citing *Pendergrass*, 2003 WL 21919182, at *1) (citing in turn *Hasbro v. Serafino,* 168 F.R.D. 99, 100 (D.Mass.1996)). Plaintiff has requested discovery documents from Marathon pursuant to Rule 34 and has filed a motion to compel Marathon's compliance with its discovery request. Plaintiff's request for the same documents from Marathon under a Rule 45 subpoena is not necessary or proper.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion to compel and for sanctions (Doc. 47) is **GRANTED** as to:

   - The EXAM Program results for $H_2S$ testing and monitoring conducted during the 2008 through May 2012 time period, including documents or electronically stored information that reflect Marathon's analysis, its calculations, the underlying data on which the analysis and calculations were based, and Marathon's recommendations for additional testing, if any.

   - The source data or underlying information for the $H_2S$ entries in the 142-page document. (*See* Perdue Depo., Doc. 53, Exh. 20).

   - Documents containing data related to testing and monitoring of dock workers for $H_2S$ exposure at Marathon's refineries from 2008 to May 26, 2012.

   The motion to compel and for sanctions is **DENIED** in all other respects.

2. Plaintiff's request for a hearing on discovery matters (Doc. 34) is **DENIED**.

3. Plaintiff's motion for leave to file additional discovery motions (Doc. 63) is **DENIED**.

4. Defendant's motion to quash plaintiff's Rule 45 subpoena served on its registered agent (Doc. 67) is **GRANTED**.

Date: 12/4/19

Karen L. Litkovitz
United States Magistrate Judge