## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRENT A. ADKINS,                                  Case No. 1:17-cv-643
     Plaintiff,                              Dlott, J.
                                                  Litkovitz, M.J.


     vs.


MARATHON PETROLEUM                                **REPORT AND**
COMPANY, LP,                                      **RECOMMENDATION**
     Defendant.

**I.  Introduction**

Plaintiff brings this action against defendant Marathon Petroleum Company, LP (Marathon).  Plaintiff alleges that he was injured as a result of long-term exposure to hydrogen sulfide ($H_2S$) while working as a deckhand, mate, tankerman, and crew member for Marathon aboard tugs and barges it owned and operated from November 2008 until May 2012.  Plaintiff alleges that Marathon negligently caused him to be chronically exposed to $H_2S$ fumes while loading and unloading cargoes of vacuum gas oil and asphalt products, leading to permanent injury.

Plaintiff filed a motion for leave to designate an expert witness and for sanctions on May 7, 2020 (Doc. 84), Marathon filed a response in opposition (Doc. 85), and plaintiff filed a reply in support of his motion (Doc. 89).  Plaintiff alleges in the motion that Marathon has "knowingly" and "deliberately suppressed documents" which the Court ordered Marathon to produce in an Order dated December 4, 2019.  (*See* Doc. 78).

The parties' discovery dispute dates back more than one year.  On May 14, 2019, the Court issued an Order following an informal discovery conference that addressed issues related to (1) the relevance of Industrial Hygiene (IH) studies to the lawsuit; (2) the documents Marathon had produced in response to plaintiff's Requests for Production Nos. 28, 29, and 30;

and (3) Marathon's explanation as to why it did not believe it was necessary to provide any additional information to satisfy these specific document requests.  (Doc. 38).  The Court ordered Marathon to: (1) respond to RFP No. 28 as revised by plaintiff and limited by the Order to the time period November 2008 through May 26, 2012 and to the following documents: (a) lab analysis of the $H_2S$ and other hydrocarbon emissions of the products transported on the vessels plaintiff was assigned to; (b) the IH samples for asphalt and VGO taken during the loading and unloading of the barges plaintiff worked on that carried those products; (c) the certificate of analysis for any testing performed related to those products on the vessels plaintiff worked on; (d) and any sampling IH reports produced in connection with asphalt and VGO samples referenced in (b), and the identity of the product tested; and (2) respond to RFP Nos. 29 and 30 to the extent they relate to the relevant time period and the relevant products (asphalt, VGO, $H_2S$, other hydrocarbon emissions) transported on the vessels plaintiff was assigned to during his employment with Marathon.

Plaintiff subsequently alleged that defendant had not properly responded to the Court's Order (Doc. 38).  The Court held an informal discovery conference and directed the parties to proceed with the Rule 30(b)(6) depositions.  Plaintiff deposed Marathon's Rule 30(b)(6) witnesses and ultimately in July 2019 filed a motion to compel or, in the alternative, for sanctions in connection with his RFP Nos. 28, 29, and 30.  (*See* Docs. 47, 47-1).  Plaintiff argued that Marathon had produced improper Rule 30(b)(6) witnesses for deposition and that Marathon had not provided "[IH] program and data results produced by that program."  (Doc. 47-1 at 22). Plaintiff alleged that Marathon had produced two documents in response to RFP Nos. 28, 29, and 30: the "142-page document" reflecting Marathon's IH activities (Bates No. MPC-

Adkins00010579-00010720)[1], which plaintiff alleged was too vague to permit a determination of the environmental risks to employees and identification of the risks being evaluated; and 17 records of $H_2S$ badge alarms from March 2009 to May 2012, which plaintiff suspected were incomplete. (Doc. 47-1 at 7-8). Plaintiff argued that among the data that appeared to be missing was "high-quality [$H_2S$] exposure monitoring data; full disclosure of alarms on $H_2S$ badges and readouts (*See* Doc. 53, Perdue Depo. at 177-78); Marathon's $H_2S$ "sampling plans" as described by Perdue (*Id*. at 72); and the "actual incident reports" underlying the 17 $H_2S$ badge alarm events included in the summary of $H_2S$ alarms prepared by Perdue and produced by Marathon in response to plaintiff's RFP No. 28, which plaintiff alleged fell under the category of sampling IH reports produced in connection with asphalt and VGO samples in Doc. 38. (Doc. 47-1 at 23-29).

The Court held a hearing on the motion on November 21, 2019. (*See* Doc. 79, Transcript). The Court issued an Order on December 4, 2019, finding that three categories of documents were relevant to plaintiff's claim "that from November of 2008 through May of 2012, defendant Marathon negligently exposed plaintiff to hydrocarbon-based chemicals which emitted hydrogen-sulfide (H2S) and other hydrocarbon gases and resulted in his current medical condition and need for an external oxygen supply." (Doc. 78 at 6). The Court ordered Marathon to produce the following three categories of documents in response to plaintiff's RFP Nos. 28, 29, and 30:

- The EXAM [Exposure Assessment Method] Program results for $H_2S$ testing and monitoring conducted during the 2008 through May 2012 time period, including documents or electronically stored information that reflect Marathon's analysis, its calculations, the underlying data on which the analysis and calculations were based, and Marathon's recommendations for additional testing, if any.

- The source data or underlying information for the $H_2S$ entries in the 142-page document. (*See* Perdue Depo., Doc. 53, Exh. 20).

---

[1] The document is attached to Perdue's deposition at Doc. 53-3, Exhibit 20.

- Documents containing data related to testing and monitoring of dock workers for $H_2S$ exposure at Marathon's refineries from 2008 to May 26, 2012.

(Doc. 78 at 15). Plaintiff's motion to compel and for sanctions was denied in all other respects.

## II. Plaintiff's second motion for sanctions

Plaintiff has filed a second motion for sanctions based on Marathon's alleged failure to disclose the documents which the Court previously ordered Marathon to produce and Marathon's alleged intentional failure to abide by the federal discovery rules. (Doc. 84).[2] Plaintiff contends that "Marathon has knowingly - for over one year - deliberately suppressed documents" that the Court ordered Marathon to produce in its Order dated December 4, 2019 (Doc. 78)." (Doc. 84 at 1). Plaintiff argues that Marathon's production of documents in response to the Court's December 4, 2019 Order is deficient because it does not contain sampling of $H_2S$ and badge alarms for DMT personnel. Plaintiff alleges that Marathon was required to produce "incident reports," witness statements, analysis of $H_2S$ monitoring when badges alarmed, and the underlying data reported in the "incident reports" in response to the Order's first bullet point on EXAM documents. Plaintiff alleges that the Excel spreadsheets identified as "MPC-Adkins00012581.xlsx," "MPC-Adkins00012582.xlsx" and "MPC-Adkins00012583.xlsx" produced by Marathon in response to the Order fail to show a sampling program, thereby making the badge alarm "incident reports" important evidence of potential $H_2S$ exposure. Plaintiff also alleges that counsel for Marathon has made misrepresentations about the existence of responsive documents and the risks and hazards associated with $H_2S$ exposure. In his reply memorandum, plaintiff contends Marathon has not provided the incident reports that explain the circumstances under which badge alarms alerted; calculations showing the "statistical risk factors based on $H_2S$

---

[2] As an initial matter, plaintiff concedes that Marathon has complied with the second bullet point of the December 4, 2019 Order to produce the source data or underlying information for the $H_2S$ entries in the 142-page document. Therefore, the Court omits any further discussion of this item in its Report and Recommendation.

sampling"; reports (other than two Bureau of Veritas laboratory documents); "[a]nalysis of what the data means as to probable exposures at given work areas"; recommendations for additional testing; and the contents of the database underlying the badge alarm incidents document Perdue testified about. (Doc. 89 at 2). Plaintiff alleges that Marathon has narrowly construed his discovery requests contrary to the Court's instruction. (*Id*. at 4). Plaintiff summarizes his argument in his reply as follows:

> Throughout the course of this matter Plaintiff has requested $H_2S[,]$ VGO and asphalt studies, monitoring, sampling and reports. As shown, and as the Court discussed in Doc #: 79, $H_2S$ exposure data were to be produced, whether gathered as a formal "sampling" program, as analysis, or as associated reports, called "incident reports." . . . The documents are "core documents," because, without them, the alarms do not reveal what work was being done, the place the alarms sounded, such as hatch cover, deck of barge, etc., or even the hydrocarbon product causing the alarm. These reports and statistical materials are the "core evidence" of what is the potential for $H_2S$ exposure to a tankerman on a barge.

(Doc. 89 at 3-4). Plaintiff alleges that Marathon has rejected the Court's "clear and unequivocal order of December 4, 2019, which [o]rdered [Marathon] to produce the 'EXAM Program results for $H_2S$ testing/monitoring during 2008-2012 that reflect the underlying data, calculations, **reports, analysis**, and recommendations for testing, if any.'" (*Id*. at 5) (emphasis added by plaintiff).

As relief and sanctions for Marathon's alleged discovery abuses, plaintiff seeks: (1) leave to add an expert witness on "Barge-Handling of Dangerous Cargoes, and Compliance with Industry Standards, Sampling Cargoes, Nature of Tankermen's Work, and Record-Keeping"; (2) monetary sanctions against Marathon under Fed. R. Civ. P. 37(a)(5)(A) for allegedly violating two discovery Orders related to plaintiff's RFP Nos. 28, 29, and 30 (Docs. 38, 78) and the discovery rules; and (3) a default judgment against Marathon pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) for its "extraordinary defiance of two clear Court Orders [Docs. 38, 78]" and "in

dishonestly answering Discovery, not following the Order by producing the documents ordered and that it knew were relevant and material; and, deliberately obfuscating their record about safety, their program, their production, their document retention, and attempting to win this case through repeated violations of [Fed. R. Civ. P.] 26(g)[3] and 37." (*Id*.).

Plaintiff requests several alternative forms of relief in the event the Court does not grant default judgment as a sanction. These include recovery of costs and fees for the discovery motions filed in this case; an order requiring a Fed. R. Civ. P. 30(b)(6) witness to assist the Court in assessing these costs; and an order precluding Marathon from introducing evidence at trial on topics related to its alleged failure to produce documents.[4] Plaintiff also seeks specific evidentiary rulings by the Court based on Marathon's alleged failure to produce evidence to the contrary.[5]

Finally, in the alternative to appointment of an expert witness, monetary sanctions, and the above evidentiary rulings, and "only if the Court denies the above relief," plaintiff asks for "a thorough, Court-supervised production by Marathon of all missing documents, and sanctions for the efforts to compel them a third time." (*Id*. at 4).

---

[3] Plaintiff alleges that Marathon violated Rule 26(g), but he appears to seek appropriate sanctions under Rule 37 for the alleged violations.

[4] These topics include: (1) Marathon's alleged performance of "barge-exposure sampling or monitoring by or for DMT personnel to determine what level in parts per million (ppm) of $H_2S$ existed after their badge monitors alerted," alleging no records have been produced in violation of Docs. 38 and 78; and (2) Marathon's alleged "$H_2S$ sampling of DMT personnel on the decks of barges." (Id. at 3).

[5] These include rulings that: (1) Marathon did not enforce its "rule requiring that $H_2S$ readings of emissions from liquid cargoes, including those of hot asphalt and hot VGO[,] be taken by instruments near open hatch covers, as required by their 'Heating of Hot Oil Barge Prior to Transit – High Sulfur Products,' Bates Adkins_001935 (Exhibit 2)," and Marathon is barred from offering evidence or arguments to the contrary; (2) Marathon did not enforce its rule requiring that the supervisor or captain file a report "when monitor badges 'alarmed,' as is specified in Bates MPC-Adkins00004688 (Exhibit 1)," and Marathon cannot offer evidence or argument to the contrary; (3) Marathon "did not formulate a database and statistical analysis of the $H_2S$ dangers of exposure to DMT personnel," and Marathon cannot offer evidence or argument to the contrary; and (4) Marathon produced documents in response to plaintiff's "Requests for Production" which defined the time frame and other parameters, and Marathon is prohibited from arguing under Fed. R. Civ. P. 26(g)(3) and Rule 37(a)(5)(A) "that any given document does not apply to Plaintiff during his employment at Marathon." (*Id*. at 3-4).

### III. Marathon's response to the motion for sanctions

Marathon opposes plaintiff's request for sanctions and for leave to name an additional expert. (Doc. 85). Marathon alleges it has fully complied with its discovery obligations. Marathon argues that the Court has already ruled on plaintiff's arguments concerning Marathon's alleged failure to comply with the Court's first discovery Order, Doc. 38, and the Court narrowed the scope of plaintiff's discovery requests in that Order in three respects: (1) the relevant time period was limited to November 2008 to May 26, 2012; (2) the relevant substances were limited to asphalt, $H_2S$, and VGO; and (3) the location was limited to the vessels plaintiff worked on. (*Id*.). Marathon argues that plaintiff's attempt to relitigate the issues addressed in that Order is improper. (*Id*. at 2).

Marathon further alleges that it complied with the Court's December 4, 2019 Order (Doc. 78), which required Marathon to supplement its document production in response to plaintiff's RFP Nos. 28, 29, and 30 with the three categories of information set forth in the Order. (Doc. 85 at 5, citing Doc. 78 at 15-16).[6] Marathon argues that the Court did not indicate that Marathon had to produce "incident reports" containing information about $H_2S$ monitoring during badge alarms, the underlying data reported in the incident reports, and the data base for the incident reports. (Doc. 85 at 5). Further, Marathon contends that it was not required to produce any information related to $H_2S$ testing and monitoring at refineries other than for dock workers at refineries between 2008 and May 26, 2012. (*Id*.).

Marathon contends it fully complied with its discovery obligations and Doc. 78 by serving on plaintiff a supplemental document production and written response describing which of the supplemental documents were responsive to the three categories of materials Marathon

---

[6] PageID#: 5073-74

7

was ordered to produce. (*Id*. at 6, citing Doc. 85-1). Marathon describes the supplemental materials it produced as including 83 pdf documents and four documents produced in a native, Microsoft Excel format "which are multi-tabbed and sortable." (*Id*., citing Doc. 85-1 - MPC-Adkins00012330-12583). Marathon contends these documents include qualitative health risk rating (HRR) information and calculations for DMT and other groups; information setting forth the underlying HRR calculation for different worker groups, tasks, and agents; health exposure rating (HER) information; and "[s]ubstantial sampling plan information." (Doc. 85 at 8-9)

Marathon contends it has provided data regarding $H_2S$ monitoring of dock workers at its refineries and terminals during the relevant time period as ordered by the Court. This includes "approximately 70 sampling data points taken on or around barges" and any "source data or underlying information associated with this monitoring data," as well as "any lab reports including case narratives, lab-generated analytical results, and chain of custody forms." (*Id*. at 10-11).

Finally, Marathon argues the Court did not order it to produce materials which plaintiff has referred to as "badge incident reports," "incident reports," and "four-gas meter readings." (*Id*. at 13). Marathon asserts that the materials plaintiff appears to reference are: "(1) the GasBadge Plus readouts received back from Industrial Scientific [a third party] and related to [Marathon]'s investigation into Adkins' claims, (2) incident reports involving $H_2S$ alarms aboard [Marathon] vessels, and (3) Orion four-gas meter readings." (*Id*. at 13). Marathon distinguishes these materials from "the monitoring data collected pursuant to the EXAM process," alleging they "are wholly unrelated to any discovery issue related to atmospheric monitoring data." (*Id.*). Marathon contends that GasBadge Plus monitors were personal monitors worn by crew members as safety devices which were set to alarm if $H_2S$ levels reach 10 ppm, and the readings are not

"monitoring 'data points.'"  (*Id*).  Marathon alleges that incident reports are likewise unrelated to Marathon's "program of personal atmospheric monitoring," and the Court did not order Marathon to produce incident reports in either of its Orders (Docs. 38, 78).  (*Id*. at 14).  Marathon alleges it nonetheless provided the "$H_2S$ alarm data related to personal $H_2S$ monitor alarms recorded between 2009 and 2012" and the incident report related to the May 26, 2012 incident when plaintiff complained of dizziness and other symptoms.  (*Id*., citing Doc. 53 at 195-202; Doc. 53-6 to 53-9; Doc. 52-7[7]).  Finally, Marathon argues that the four-gas meters were safety devices used to check $H_2S$ concentrations on barges when necessary, but they were not used as a routine monitoring tool.  (*Id*. at 14-15, citing Doc. 53 at 203[8]).  Nonetheless, those readings that were recorded on the devices and that Marathon located through its document search were provided to plaintiff.  (*Id*. at 15, citing Dr. Rachael Jones Depo., Doc. 77 at 408-11[9]).

## IV.  The Court's July 28, 2020 Order[10]

Throughout discovery in this matter, plaintiff has sought information regarding his potential exposure to $H_2S$.  The Court granted prior requests by plaintiff for such information, including discovery related to Marathon's Exposure Assessment Method (EXAM) Program.[11]  The Court initially understood that information related to potential $H_2S$ exposure that plaintiff sought consisted of Marathon's qualitative analysis and monitoring that is part of the EXAM

---

[7] PageID#: 2135-42, 2417-21, 1927-32

[8]  PageID#: 2143

[9]  Page ID#: 5020-23

[10] The Court reiterates, verbatim, portions of this Order to give further context to the Court's ruling below.

[11] Kristopher Scott Perdue, a Marathon Industrial Hygienist, testified about the EXAM Program during his Rule 30(b)(6) deposition. (Doc. 53).  Perdue described the EXAM Program as a "risk assessment-type of methodology" which "incorporates IH [Industrial Hygiene]'s best practices."  (*Id*. at 113-15).

Program, which Marathon was ordered to produce. At the hearing on his motion to designate an expert and for sanctions and in his supporting memoranda, plaintiff provided additional information about other documents and information related to his potential $H_2S$ exposure that Marathon had not produced but which are relevant and discoverable.

Specifically, Perdue's deposition testimony clarifies that in addition to the qualitative analysis and monitoring Marathon performs under the EXAM Program, Marathon furnishes workers with safety devices, including badge alarms and four-gas meters, which the Court now understands are not part of the EXAM Program but which provide information about $H_2S$ levels and possible $H_2S$ exposure. (Doc. 53 at 147-48; *see* 212-13, 280). Badge alarms alert when a specified level of $H_2S$ is present and register the peak level reading during the alert period. (*Id.* at 147-48). The badge alarms are "not capable of logging general monitoring data." (*Id.* at 212). A "data log" can be obtained only from the alarm manufacturer and a special docking station which shows the duration of the alarm and the highest concentration of the alarm event. (*Id.* at 146, 147-48). In response to badge alarm alerts, Marathon generates incident reports which are accompanied by witness statements. (*Id.* at 151, 155-56). In addition, four-gas meters are used for respiratory protection, and readings that are generated are retained only as part of a witness statement or incident report. (*Id.* at 280). Incident reports document peak readings; any four-gas meter readings that were taken to clear the area; what the worker was doing at the time of the alert; the worker's task; and corrective actions implemented. (*Id.* at 149-50, 155-56). The incident reports are saved in a data base. (*Id.* at 156-57).

For the reasons stated at the hearing, the incident reports generated when a badge alarm alerts to the presence of $H_2S$ contain information that is relevant and discoverable. The Court therefore ordered Marathon to produce any badge alarm alerts and resulting incident reports

(including witness statements, H₂S readings from any badge alarms and four-gas meters, and corrective actions taken) for the relevant time period of November 2008 to May 2012 for the vessels plaintiff worked on during that time period. The Court also ordered Marathon to submit "an affidavit from the individual who provided MPC-Adkins 00012583, the spreadsheet that is part of Marathon's EXAM analysis," verifying specified information about the spreadsheet. (Doc. 93 at 3). The Court stated it would take plaintiff's requests to designate an expert witness and for sanctions (Doc. 84) under submission and issue a Report and Recommendation.

**V. Resolution**

    *A.* ***Standard for discovery sanctions***

    Fed. R. Civ. P. 37(b)(2) provides for sanctions where a party fails to comply with a discovery order. Under Rule 37(b)(2)(A), a court may sanction parties who fail to comply with its orders, including issuing a default judgment against a litigant who abuses the discovery process. *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). Rule 37(b) provides that if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," which "may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> . . . .
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party. . . ."

Fed. R. Civ. P. 37(b)(2)(A). *See O'Dell v. Kelly Services, Inc.*, 334 F.R.D. 486, 490-91 (E.D. Mich. 2020) (sanctions available under the Rule include "limiting the disobedient party's proofs or testimony, striking pleadings, monetary sanctions, and dismissing an action when it is the

plaintiff who has failed to comply") (citing *National Hockey League v. Metropolitan Hockey Club, Inc*., 427 U.S. 639, 643 (1976); *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)). *See also Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (expanding *Regional Refuse* to include the granting of a default judgment as a sanction).

The court considers four factors in determining whether default judgment is an appropriate sanction for failure to comply with a discovery obligation or other court order: (1) Was the party's failure to cooperate in discovery the result of willfulness, bad faith, or fault? (2) Was the opposing party prejudiced by that failure? (3) Did the court give adequate warning it was contemplating default judgment? and (4) Could less drastic sanctions have ensured compliance? *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) (citing *Grange Mut*., 270 F. App'x at 376). *See also Mager v. Wisconsin C. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019). "To show that a party's failure to comply was motivated by bad faith, willfulness, or fault, the conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [its] conduct on those proceedings.'" *Mager,* 924 F.3d at 837 (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). *See also Barron v. U. of Michigan*, 613 F. App'x 480, 484 (6th Cir. 2015) ("The [party's] conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.") (internal citations and quotation marks omitted).

The Sixth Circuit has cautioned against case dispositive sanctions where the failure to comply is attributable solely to the neglect of counsel. *Mager,* 924 F.3d at 838. Dismissal (or default judgment) is "usually inappropriate" in such a case. *Id*. (citing *Carpenter*, 723 F.3d at

704).  "Although no one factor is dispositive, dismissal [or default judgment] is proper if the

record demonstrates delay or contumacious conduct."  *Id.* (citing *Reyes*, 307 F.3d at 458;

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997)).  "Contumacious conduct"

is "behavior that is perverse in resisting authority and stubbornly disobedient."  *Mager,* 924 F.3d

at 837 (quoting *Carpenter*, 723 F.3d at 705) (citation and internal quotation marks omitted).

### B.  *Plaintiff is not entitled to sanctions under Rule 37(b)*

Plaintiff contends he is entitled to a default judgment under Rule 37(b)(2)(A)(vi) because

Marathon has allegedly shown "extraordinary defiance of two clear Court Orders" issued in this

case (Docs. 38, 47) and the rules of discovery.  (Doc. 84 at 2).  Plaintiff alleges Marathon has

done so by "dishonestly answering [d]iscovery"; "not following the Order[s] by producing the

documents ordered," which Marathon "knew were relevant and material"; "deliberately

obfuscating [Marathon's] record about safety, their program, their production, [and] their

document retention"; and "attempting to win this case through repeated violations of [Rule]

26(g) and 37."  (*Id.*).  Plaintiff alleges that Marathon has not produced "incident reports," which

plaintiff allegedly has sought for two years, and which "should include the $H_2S$ levels at the

hatch covers during that barge loading or unloading job task."  (*Id.* at 4-5).

Plaintiff specifically alleges that Marathon has failed to produce four categories of

information.  First, plaintiff contends that Marathon has failed to produce the information it was

ordered to produce in Doc. 78, ¶ 1, bullet point 1: the "incident reports, witness statements,

analysis of $H_2S$ monitoring when badges alarmed, and the underlying data reported in the

'incident reports,' as well as the incident report data base."  (Doc. 84 at 7).  Second, plaintiff

contends that Marathon has failed to produce DMT incident reports in response to his Requests

for Production and the Court's two discovery Orders, Docs. 38 and 78.  (Doc. 84 at 11).  Third,

plaintiff asserts that Marathon has not produced in response to the Court's second discovery Order, Doc. 78, a "$H_2S$ 'badge monitor alarm' ppm [parts per million] recording, from any refinery worker," despite documentation indicating that "more than 1000 badge alarm incidents occurred at just 2 of Marathon's 17 refineries over the years 2007 and 2008." (*Id*.). Fourth, plaintiff asserts that he requested "the statistical analysis required by MPC-Adkins00004824-00004837" (EXAM Program), which was "noted by [Marathon Industrial Hygienist Scott] Perdue in his deposition" and ordered to be produced by the Court (Doc. 78, ¶ 1, bullet point 1). (*Id*.). Plaintiff alleges that despite his request, Marathon has produced "an insufficient quantity of data . . . to perform any statistical analysis." (*Id*.).

Plaintiff has not shown that the four factors to be considered by the Court in determining whether default judgment is an appropriate sanction weigh in favor of imposing default judgment against Marathon as a discovery sanction. First, the evidence provided by plaintiff does not show that Marathon willfully or in bad faith failed to produce documents requested by plaintiff and/or ordered to be produced by the Court. *See Mager*, 924 F.3d at 837-38. Plaintiff claims there is evidence of "intentional discovery abuse" because Marathon failed to produce "incident reports" which Marathon's Rule 30(b)(6) witness, Industrial Hygienist Scott Perdue, testified about during his June 13, 2019 deposition. (Doc. 84 at 11, citing Doc. 53, generally). Plaintiff alleges that Marathon's counsel knew that plaintiff sought incident reports; knew there were incident reports for badge alarm events and where the reports were located; misrepresented to the Court in a telephone discovery conference held the day after Perdue's deposition that "there are no more documents"[12]; and again on November 21, 2019 misrepresented that Marathon had

---

[12] The informal discovery conference plaintiff references occurred on July 11, 2019. (Doc. 42). Perdue's deposition was taken two days later on June 13, 2019. (Doc. 53).

produced all documents ordered to be produced in Doc. 38. (Doc. 84 at 11-12, citing Doc. 79 at 28[13]). However, it is not clear from the materials plaintiff cites that Marathon or its counsel made an intentional misrepresentation to the Court about its document production in connection with these earlier discovery proceedings.

Further, the Court subsequently found in its most recent Order issued after the July 2020 sanctions hearing that plaintiff had provided additional information about documents and information related to his potential exposure to $H_2S$, including badge alarm alerts and resulting incident reports which were not generated in connection with the EXAM Program. (Doc. 93). The parties clarified that the IH sampling of $H_2S$ performed as part of the EXAM Program was separate from the $H_2S$ information recorded by the safety devices worn by workers when $H_2S$ exceeded a specified level. Therefore, the Court ordered Marathon to produce the badge alarm alerts and resulting incident reports for the vessels plaintiff worked on for the November 2008 to May 2012 time period. (*Id*. at 3). But neither the information provided by plaintiff in his sanctions motion and at the sanctions hearing, nor the Court's Order that Marathon produce this information, supports the imposition of sanctions. Plaintiff has not pointed to any evidence to show that relevant documentation of this nature was generated during the November 2008 to May 2012 time period for vessels that plaintiff worked on; that Marathon is in possession of such information; and that Marathon willfully or in bad faith withheld the information knowing it was relevant to plaintiff's claims. Thus, plaintiff has not shown that Marathon's failure to produce the incident reports in response to Doc. 38 or Doc. 78 and prior to the Court's July 28, 2020 Order (Doc. 93) is "evidence of intentional discovery abuse." (*See* Doc. 84 at 11).

---

[13] PageID#: 5102, line 2. This is actually a comment by the Court.

As further evidence of intentional discovery abuse, plaintiff alleges that Marathon, through its counsel Daniel Massey, has made "numerous false and misleading statements" to plaintiff and the Court about (1) the nature of plaintiff's work and the risks and hazards associated with his work; (2) the dangers of exposure to $H_2S$; and (3) the "specific nature and applicability of Defendant's EXAM Program to this matter." (*Id*. at 12). Plaintiff also alleges that Mr. Massey has made misrepresentations about "Marathon's record-keeping" and "hazards of DMT personnel jobs." (*Id*.). Plaintiff alleges that on different dates, Massey represented that: (1) Marathon had produced all data and materials it had been ordered to produce (*Id*., citing Doc. 79 at 87- Mr. Massey argued that Perdue had testified at his deposition that "all the data ha[d] been produced" and that Marathon had produced all data and all materials it was "supposed to produce" pursuant to the Court's Order (Doc. 38); (2) $H_2S$ had been found to present a low risk of harm to tankermen and no risk to deck crew personnel (*Id*. at 12, citing Doc. 38-2 at 5 – Marathon's brief to the court following informal discovery conference asserting it monitored relatively few vessel deck crew personnel for $H_2S$ or chemical exposure because such work poses a low risk of such exposure; and (3) witnesses had explained that Marathon did not have a "more robust [$H_2S$] air monitoring program . . . because it was determined [$H_2S$] didn't present any risk of harm whatsoever to deck crew personnel" (*Id*. at 12-13, citing Doc. 79 at 18).[14]

Plaintiff has not shown that Marathon falsely represented that it did not have responsive documents or information in its possession or that it willfully refused to provide information in response to the Court's prior Orders. There is no evidence that Marathon intentionally withheld information and documents it was ordered to produce with the knowledge such information and

---

[14] Doc. 79 at PageID#: 5161; Doc. 38-2 at PageID#: 551; Doc. 79 at PageID#: 5092.

documents were relevant to plaintiff's discovery requests.  To the extent plaintiff alleges that Marathon failed to provide specific documents in response to the Court's prior Orders, the parties could reasonably disagree about the scope of the Court's prior discovery Orders and whether they encompassed the badge alarm alerts, the four-gas meter readings, and incident reports containing related information.  The Court granted prior requests by plaintiff for information regarding his potential exposure to $H_2S$ (*See* Doc. 93 at 1), which the Court initially understood consisted of qualitative analysis and monitoring that is part of the EXAM Program.  The Court ordered Marathon to provide additional information to explain an apparent gap in the Exam Program as it related to $H_2S$ testing.  Plaintiff has since provided additional information about documents and information related to his potential $H_2S$ exposure that are not part of the EXAM Program, which the Court has found are relevant and discoverable, and which Marathon has been ordered to produce.  (*See* Doc. 93 at 2).  To the extent there was any uncertainty about the scope of the Court's prior Orders, the most recent Order following the July 24, 2020 hearing clarifies the scope by requiring that: (1) Marathon produce "any badge alarm alerts and resulting incident reports (including witness statements, $H_2S$ readings from any badge alarms and four-gas meters, and corrective actions taken) for the relevant time period of November 2008 to May 2012 for the vessels plaintiff worked on during that time period"; (2) the parties "exchange lists of the names of the vessels plaintiff worked on during his employment with Marathon"; and (3) Marathon submit "an affidavit from the individual who provided MPC-Adkins 00012583, the spreadsheet that is part of Marathon's EXAM analysis," verifying specified information about the spreadsheet.  (Doc. 93 at 3).

Plaintiff's argument that Marathon knew about this information and that it was required to produce it in response to the Court's earlier Orders, but Marathon willfully withheld that

information in defiance of the Court's Orders, is based on speculation. To support his claim that Marathon knew about relevant sampling and monitoring data in incident reports, and intentionally withheld those documents from discovery, plaintiff makes sweeping generalizations about the motivations of Marathon and its counsel. For instance, plaintiff alleges that the "representations of Mr. Massey to this Court were made knowing they were not true" and the alleged "discovery abuse was calculated." (Doc. 84 at 14). Plaintiff does not cite specific evidence to support this allegation but speculates "[w]hat other explanation" could there be after "two thorough hearings, with the facts fully on the table, and very clear proof of what [plaintiff] want[s], which this Court ordered produced. . . ." (*Id*.). Similarly, plaintiff's counsel theorized at the sanctions hearing that Marathon's failure to disclose the existence of the incident reports and the data they contained could not be "by mistake" and that Marathon "probably" directed its attorneys that under no circumstances were they to produce the incident reports that reflect the badge alarms that have been triggered on Marathon barges. But speculation, unsupported by evidence in the record that shows Marathon willfully withheld evidence with an intent to thwart the judicial process, cannot support imposing the severe sanction of default judgment on Marathon.

Plaintiff also argues that Marathon falsely represented that it had not produced data on $H_2S$ because Marathon had determined that $H_2S$ did not pose a danger to workers, thus making it unnecessary to perform $H_2S$ testing. (*See* November 21, 2019 hearing, Doc. 79 at 19-20[15]). However, plaintiff's contention is not supported by the record. As the Court clarified at the November hearing, Marathon actually represented that it had determined that $H_2S$ testing was not necessary based on a finding that exposure to $H_2S$ posed a *limited* risk of harm to its workers.

---

[15] PageID#: 5093-94.

(Doc. 79 at 19-22). The Court's concern was not whether Marathon's determination was meritorious, but rather whether there was evidence which indicated that the evidence Marathon had provided to that point was incomplete, inaccurate, or not representative of what Marathon was legally obligated to keep and whether there was an evidentiary basis to compel Marathon to produce information in addition to Exhibit 20. (Doc. 79 at 20). The Court found that the evidence supported the production of the information set forth in Doc. 78, but the Court did not order the production of sampling and monitoring materials beyond those generated in connection with the EXAM Program.

Further, the specific instances of alleged malfeasance plaintiff cites do not withstand scrutiny. For example, at the hearing on the motion for sanctions, plaintiff's counsel argued that Marathon removed information from a chart that identified $H_2S$ badge monitoring alerts recorded between 2009 and 2012; specifically, the location and name of the vessel involved. (*See* Doc. 53-5, Perdue Depo., Exh.22). Plaintiff suggested that Marathon is purposefully concealing relevant information that is contained in this chart. Plaintiff's contention that Marathon was purposefully concealing this information does not comport with Perdue's deposition testimony.

Plaintiff specifically questioned Perdue at his deposition about this chart and the blank entries. (Doc. 53 at 159-177). Perdue explained that the information in the chart was pulled from incident reports of $H_2S$ alarms. Perdue testified that entries were left blank where the incident reports themselves failed to identify specific incident locations and vessel names. (Doc. 53 at 173[16]). Perdue also testified that the chart was the "extent of the information" he had compiled. (*Id*. at 174[17]). This evidence does not support plaintiff's contention that Marathon

---

[16] PageID#: 2113

[17] PageID#: 2114

removed information from the chart to thwart plaintiff's discovery efforts. Plaintiff has failed to meet his burden of proof to show that Marathon acted in bad faith or willfully withheld discovery from plaintiff. Thus, the first factor to be considered does not support imposing default judgment against Marathon as a sanction for alleged discovery abuses.

Nor are the remaining three factors satisfied. A party "is prejudiced by a recalcitrant party's failure to cooperate in discovery when the party 'waste[d] time, money, and effort in pursuit of cooperation which [the recalcitrant party] was legally obligated to provide.'" *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010) (citing *Harmon v. CSX Transp., Inc.,* 110 F.3d 364, 368 (6th Cir. 1997)). Although plaintiff has come to the Court multiple times seeking discovery, plaintiff has not shown that Marathon has failed to cooperate in providing discovery that it was legally obligated to provide. For the reasons discussed above, though the scope of the documents and information Marathon is required to produce has been expanded over the course of discovery, it is not clear that Marathon or its counsel have caused plaintiff to incur additional time and expenses by willfully failing to provide outstanding, relevant discovery that Marathon was legally required to provide to plaintiff.

The third factor to consider is whether the party has been given prior warning that its failure to cooperate could lead to default judgment. *Prime Rate Premium Fin. Corp.*, 930 F.3d at 769. Prior notice that a party's further noncompliance with discovery would result in dismissal or default judgment is not indispensable but is one factor to be considered. *Mager*, 924 F.3d at 840. In such a case, a penalty shorty of dismissal is appropriate unless the recalcitrant party "has engaged in bad faith or contumacious conduct." *Id*. (quoting *Harmon*, 110 F.3d at 367). Plaintiff has not shown that Marathon has failed to cooperate in discovery or withheld discovery material in bad faith, and Marathon has not been given prior notice that its failure to cooperate in

20

discovery could lead to default judgment against it. This factor weighs against imposing default judgment against Marathon as a discovery sanction.

Finally, the Court need not consider whether alternative sanctions exist to protect the integrity of the judicial process, *Prime Rate Premium Fin. Corp*., 930 F.3d at 769, because plaintiff has not shown that he is entitled to any sanctions in this case. The Court finds that neither default judgment nor any lesser sanctions requested by plaintiff are appropriate. Because the evidence does not show that Marathon intentionally failed to produce discovery ordered by the Court, there is no basis at this point for precluding Marathon from presenting any specific evidence at trial. For this same reason, plaintiff is not entitled to an award of expenses under Fed. R. Civ. P. 37(b), which provides that where a failure to obey an order to provide or permit discovery has caused a party to incur expenses,

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). The parties' discovery dispute turns on construction of the Court's prior discovery Orders, and specifically whether the information plaintiff seeks falls within the scope of "documentation related to the results of $H_2S$ testing and monitoring conducted under the EXAM Program for the 2008 through 2012 time period, including documents or electronically stored information that reflect the underlying data, calculations, reports, analysis, and recommendations for additional testing made by Marathon, if any. . . ." (Doc. 78 at 15). The evidence does not show that Marathon intentionally failed to disclose discovery it was required to provide in accordance with the terms of the Court's Order. Plaintiff's motion for default judgment or a lesser sanction under Rule 37(b) should be denied. *See N.T. by and through Nelson v. Children's Hosp. Med. Ctr.*, No. 1:13-cv-230,

2017 WL 5953118, at *7 (S.D. Ohio Sept. 27, 2017) (Rule 37(b) sanctions are triggered by non-compliance with a court order, which the plaintiff failed to show).

## VI. Request for monetary sanctions under Fed. R. Civ. P. 37(a)(5(A)

A party may move for an order compelling disclosure of discovery on notice to other parties under Fed. R. Civ. P. 37. If a party fails to answer an interrogatory under Rule 33 or to produce documents requested under Rule 34, a party may move to compel a discovery response. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" for purposes of Rule 37(a). Fed. R. Civ. P. 37(a)(4). If the Court grants the motion to compel or if the party provides the disclosure or requested discovery after the motion was filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court must not order such payment under these circumstances: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

The Court finds that an award of monetary sanctions under Fed. R. Civ. P. 37(a)(5)(A) is not warranted. For the reasons discussed above, the Court finds that Marathon did not violate the Court's prior Orders related to plaintiff's RFP Nos. 28, 29, and 30. Plaintiff's request should be denied.

## VII.  Request for leave to name an additional expert

Plaintiff seeks leave to name an additional expert to testify on the standard of care in the marine industry for conducting surveys, testing, and sampling on a routine basis in order to provide a safe place to work, including the proper method of record keeping and performing Bayesian analysis.  Plaintiff notes that Perdue indicated that Marathon tested hatch covers for $H_2S$ (Doc. 53 at 129[18]), but the evidence produced shows that Marathon did not do so in the sense of routinely taking samples.  Rather, plaintiff alleges it has become clear that Marathon took $H_2S$ samples only if personal badge alarms alerted, and the results would be known only if an incident report was generated which reflected the peak reading and the four-gas meter readings.  Plaintiff alleges that although he has retained five experts to date, another expert is needed now that it has been shown that Marathon does not have a standard of care for providing a safe workplace related to $H_2S$.  Plaintiff alleges that Dr. Jones, who he has retained as an expert, can interpret and explain data, but she cannot testify on the industry standard of care because she has not worked in and is not familiar with the maritime industry.

Marathon opposes plaintiff's request to name an additional "maritime expert on industry records and practices."  (Doc. 85).  Marathon contends the deadline to disclose experts elapsed over one year ago (*Id*. at 15, citing Doc. 30); plaintiff's request is not supported by good cause required under Fed. R. Civ. P. 7 and 16; and an additional expert witness would create the potential for cumulative expert testimony.  (*Id*. at 1, 15).  Marathon asserts that plaintiff has already retained five expert witnesses in this case, which is the maximum number allowed by the Court.  (*Id*., citing Doc. 32; Judge Dlott's Standing Order on Civil Procedures, p. 7).  Marathon argues that plaintiff has disclosed one expert on "maritime issues" and "standards used in the

---

[18] PageID#: 2069

maritime industry," Captain Mitchell Stoller, and another expert, Dr. Jones, whose area of focus would overlap with that of the proposed expert. (*Id.* at 16). Marathon claims that plaintiff has not shown that he requires another expert to address issues similar to those that fall within Captain Stoller and Dr. Jones's areas of expertise, and his motion for leave to add a sixth expert should be denied. (*Id.* at 16, citing *Waters v. Johnson & Johnson Co.*, No. 2:09-cv-00473, 2011 WL 798092 (S.D. Ohio Feb. 28, 2011) (denying motion to designate experts out of time where good cause for extending deadline was not shown); *Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2016 WL 339972 (S.D. Ohio Jan. 28, 2016) (motion to designate experts denied where the motion was untimely and defendants would suffer prejudice if the motion was granted)).

Plaintiff moves to name another expert as a sanction for defendant's alleged discovery abuses. Plaintiff is not entitled to an additional expert for this reason. First, plaintiff has not shown that Marathon has intentionally withheld discovery or otherwise abused the discovery process. Further, plaintiff has not rebutted Marathon's allegations that any testimony provided by plaintiff's proposed additional expert would likely be cumulative of the testimony provided by Dr. Jones and Captain Stoller. Plaintiff's motion to name a sixth expert should therefore be denied.

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's motion for sanctions and for leave to name an additional expert witness (Doc. 84) be **DENIED**.


Date: ___8/27/2020_____

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRENT A. ADKINS,                                              Case No. 1:17-cv-643
      Plaintiff,                                                   Dlott, J.
                                                    Litkovitz, M.J.

         vs.

MARATHON PETROLEUM
COMPANY, LP,
      Defendant.

**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).